1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

10   SIERRA CLUB and FRIENDS OF          No.   13-cv-00267 JAM-EFB
     THE WEST SHORE,
11
              Plaintiffs,
12                                        **ORDER GRANTING DEFENDANT'S**
         v.                               **MOTION TO DISMISS IN PART AND**
13                                        **DENYING IN PART**
     TAHOE REGIONAL PLANNING
14   AGENCY,

15            Defendant.

16

17        This matter is before the Court on Defendant Tahoe Regional

18   Planning Agency's ("Defendant" or "TRPA") Motion to Dismiss

19   Plaintiffs' Complaint (Doc. #7).  Plaintiffs Sierra Club and

20   Friends of the West Shore (Collectively "Plaintiffs") oppose the

21   motion (Doc. #14).  Defendant replied (Doc. #16).[1]  For the

22   following reasons, Defendant's Motion to Dismiss is GRANTED in

23   part and DENIED in part.

24

25

26
     _____

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for May 15, 2013.

                                  1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs filed their complaint with this Court on February 11, 2013 (Doc. #1).  Plaintiffs allege five causes of action against Defendant: (1) Delegation of TRPA's project approval and review duties in violation of the Tahoe Regional Planning Compact ("Compact"); (2) failure of the regional plan to establish and ensure compliance with minimum regional standards; (3) failure to properly make threshold findings pursuant to the Compact and code sections 4.5 and 4.6; (4) failure to adequately analyze significant impacts in violation of the Compact; and (5) failure to mitigate significant impacts in violation of the Compact. Compl. ¶¶ 72-102.  Defendant moves to dismiss Plaintiffs' complaint for failure to prosecute, moves to dismiss Plaintiffs' state law claims, and moves to dismiss the first and second causes of action.  Plaintiffs' state law claims are not distinct causes of action; instead, they are mentioned as alternatives to Plaintiffs' federal Compact claims in the jurisdictional allegations, Compl. ¶¶ 8-10, and request for relief, Compl. at 32:23-25.

A.   The Compact

In 1968, California and Nevada entered into the Tahoe Regional Planning Compact, Pub. L. No. 95-551, 94 Stat. 3233 (1980); Cal. Gov. Code §§ 66800, 66901; Nev. Rev. Stat. §§ 277.200 et seq. ("Compact"), designed to protect the natural resources and control development in the Lake Tahoe Basin ("Basin").  Compl. ¶¶ 1-2, 8.  The Compact created the Tahoe Regional Planning Agency ("TRPA") to serve as the region's land use and environmental protection agency.  Id. ¶ 1.  The Compact

1  became effective by congressional authorization in December 1969.

2  Id.  In 1980, the initial Compact was amended to increase the

3  level of environmental protection for the Basin; Congress

4  authorized the amendments in December 1980.  Id.  In 1987, a

5  Regional Plan was adopted pursuant to the Compact to strengthen

6  its provisions.  Id. ¶ 2.

7      B.   Regional Plan Update

8      Beginning in 2010, TRPA undertook the Regional Plan Update

9  ("RPU") to revise the 1987 Regional Plan.  Id. ¶ 3.  On December

10 12, 2012, TRPA adopted the RPU.  Id. ¶ 4.  Under the RPU, TRPA

11 has authority to delegate to local governments TRPA's project

12 review and approval duties.  Id.  The RPU also opens over 300

13 acres of undeveloped land to "resort recreation" development,

14 expanding Tahoe's urban boundary; allows up to 3,200 new

15 residential units and 200,000 square feet of new commercial floor

16 area; and allows increased concentration of coverage closer to

17 the Lake in urban core areas.  Id. ¶ 6.

18

19              II.  OPINION

20     A.   Legal Standard

21         1.   Failure to Prosecute

22     Courts have discretion to dismiss a case for failure to

23 prosecute "[i]f the plaintiff fails to prosecute or to comply

24 with these rules or a court order."  Fed. R. Civ. P. 41(b).

25 "[D]ismissal for lack of prosecution must be supported by a

26 showing of unreasonable delay," which, if shown, "creates a

27 presumption of injury to the defense."  Henderson v. Duncan, 779

28 F.2d 1421, 1423 (9th Cir. 1986) (citations omitted).  However,

1   dismissal is a harsh penalty and is to be imposed only in extreme
2   circumstances.  Id. (citing Raiford v. Pounds, 640 F.2d 944, 945
3   (9th Cir. 1981)).

4   　　　To determine whether dismissal with prejudice is warranted
5   for failure to prosecute, the Court must weigh the following
6   factors: "(1) the public's interest in expeditious resolution of
7   litigation; (2) the Court's need to manage its docket; (3) the
8   risk of prejudice to defendants/ respondents; (4) the
9   availability of less drastic alternatives; and (5) the public
10  policy favoring disposition of cases on their merits."
11  Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002) (citing
12  Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

13  　　　　　2.   Motion to Dismiss

14  　　　A party may move to dismiss an action for failure to state a
15  claim upon which relief can be granted pursuant to Federal Rule
16  of Civil Procedure 12(b)(6).  In considering a motion to dismiss,
17  the court must accept the allegations in the complaint as true
18  and draw all reasonable inferences in favor of the plaintiff.
19  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other
20  grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto,
21  405 U.S. 319, 322 (1972).  Assertions that are mere "legal
22  conclusions," however, are not entitled to the assumption of
23  truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
24  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive
25  a motion to dismiss, a plaintiff needs to plead "enough facts to
26  state a claim to relief that is plausible on its face."  Twombly,
27  550 U.S. at 570.  Dismissal is appropriate where the plaintiff
28  fails to state a claim supportable by a cognizable legal theory.

1  Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th
2  Cir. 1990).

3       Upon granting a motion to dismiss for failure to state a
4  claim, the court has discretion to allow leave to amend the
5  complaint pursuant to Federal Rule of Civil Procedure 15(a).
6  "Dismissal with prejudice and without leave to amend is not
7  appropriate unless it is clear . . . that the complaint could not
8  be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,
9  Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

10      B.   Judicial Notice
11      Both parties request judicial notice.
12           1.   Defendant's request
13      Defendant requests judicial notice of the Compact, TRPA's
14  Code of Ordinance ("Code"), and select Articles of TRPA's Rule of
15  Procedure.  See Def.'s Request for Judicial Notice ("DRJN"), Exs.
16  A–C attached to Declaration of Howard F. Wilkins ("Wilkins
17  Decl."), Doc. #11.  Plaintiffs do not oppose Defendant's request.
18  Exhibits A, B, and C are appropriate for judicial notice because
19  they are government publications, public records, and their
20  contents are "not subject to reasonable dispute."  Fed. R. Evid.
21  201(b); see Santa Monica Food Not Bombs v. City of Santa Monica,
22  450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (noting that judicial
23  notice may be taken of public records); Long Beach Area Peace
24  Network v. City of Long Beach, 522 F.3d 1010, 1025, n. 4 (9th
25  Cir. 2008) (judicial notice taken of city ordinance and
26  definitions contained in administrative regulation).

27      Accordingly, the Court grants Defendant's request for
28  judicial notice.

1          2.    Plaintiffs' Request

2      Plaintiffs request judicial notice of Exhibits A through G

3  to the Declaration of Wendy S. Park ("Park Declaration") and

4  Exhibit A to the Declaration of Laurel W. Ames ("Ames

5  Declaration").  Pls.' Request for Judicial Notice ("PRJN"), Doc.

6  #14-6, at 1. Defendant opposes Plaintiffs' request on relevancy

7  grounds.  Def.'s Opposition to PRJN, Doc. #16, at 1-3.  Exhibits

8  A and B attached to the Park Declaration involve record

9  preparation costs for an unrelated action and therefore are not

10 relevant as to whether TRPA had authority to adopt TRPA Rules of

11 Procedure 10.6.2, which is purely a legal question.

12     Exhibits C through G to the Park Declaration and Exhibit A

13 to the Ames Declaration are public records related to ongoing

14 local area planning efforts, TRPA Rules of Procedure, and TRPA

15 Regional Plan.  The Court finds these public records relevant to

16 determine Plaintiffs' standing and appropriate for judicial

17 notice.  Santa Monica Food Not Bombs, 450 F.3d at 1025 n.2.

18     Accordingly, the Court grants Plaintiffs' request for

19 judicial notice as to Exhibits C through G to the Park

20 Declaration and Exhibit A to the Ames Declaration but denies

21 Plaintiffs' request as to Exhibits A and B attached to the Park

22 Declaration.

23     C.   Evidentiary Objections

24     Defendant objects to several sections of the declarations

25 offered by Plaintiffs.  Objections to Ames, Quashnick, Anderson,

26 Gearhart, and Park Declarations, Doc. #16.  Plaintiffs filed a

27 response to these objections.  Response to Reply, Doc. #17.

28     For the reasons stated above, Defendant's relevancy

                                6

1  objections as to local area planning efforts are overruled
2  because the Court finds the information relevant and Defendant's
3  relevancy objection as to the costs in an unrelated case is
4  sustained.  Finally, the Court need not address all other
5  objections because the Court did not rely on any portion of the
6  evidence to which Defendant objected.

7      Accordingly, the Court sustains in part and overrules in
8  part Defendant's evidentiary objections.

9      D.   <u>Discussion</u>

10          1.   <u>Dismissal for Failure to Pay for the
11               Administrative Record</u>

12      Defendant argues that Plaintiffs have failed to prosecute
13  this case diligently by refusing to pay a fee to Defendant for
14  the preparation of the administrative record.  Plaintiffs argue
15  that they are not required to pay the fee and even if they are
16  required, they have not failed to prosecute their case to warrant
17  dismissal.  Both parties agree that the administrative record is
18  essential.  Mot. at 10; Opp. at 5, 10.

19               (a)  <u>Costs for the Administrative Record</u>

20      TRPA Rule of Procedure 10.6.2 ("Rule 10.6.2") provides as
21  follows:

22      Any Agency cost related to preparation of the
        administrative record, including but not limited to
23      the use of resources or staff time to gather
        documents, organize and create an index to the
24      administrative record, conduct a privilege review of
        the administrative record, shall be borne by the
25      plaintiff(s) in the legal action.

26  Rule 10.6.2, TRPA's Rule of Procedure, Ex. C attached to Wilkins
27  Decl., Doc. #11, at 10-1.  Defendant claims that the Compact
28  authorizes such fee recovery: "The agency may fix and collect

                                    7

1  reasonable fees for any service rendered by it."  Compact, Art.

2  VIII(b) ("Article VIII(b)"), Ex. A attached to Wilkins Decl.,

3  Doc. #11, at 18.

4      Plaintiffs argue that TRPA lacked authority to adopt Rule

5  10.6.2 and Rule 10.6.2 conflicts with the American Rule on costs,

6  which typically requires parties to bear their own costs in

7  litigation.  Plaintiffs rely on the definition of "service,"

8  which, from the definitions provided by Plaintiffs, generally

9  means work done for others.  Opp. at 6.  However, this definition

10  does not prevent TRPA from adopting Rule 10.6.2 because it is

11  broad enough to encompass production of an administrative record

12  for plaintiffs in litigation.

13      As Plaintiffs point out, TRPA's authority to adopt Rule

14  10.6.2 could have been clearer if Article VIII(b) were located in

15  the litigation section of the Compact.  Nevertheless, because

16  Article VIII(b) is located in the Finances section, it gives TRPA

17  broad authority to adopt several similar rules.  See, e.g., TRPA

18  Rule of Procedure 10.7.1 ("Whenever the Agency performs services

19  for members of the public . . . the Agency shall collect a

20  reasonable charge for the purpose of recovering costs to the

21  Agency."); TRPA Rule of Procedure 10.8.1 ("Fee schedules for

22  project review and preparation of environmental documents shall

23  be set by resolution of the Body.")

24      Moreover, even though "[u]nder the American rule, litigants

25  ordinarily are required to bear the expenses of their

26  litigation," this is only a default rule that may be altered if

27  "a statute or private agreement provides otherwise."  Grove v.

28  Wells Fargo Fin. California, Inc., 606 F.3d 577, 579 (9th Cir.

1   2010).  Here, Article VIII(b) in conjunction with Rule 10.6.2

2   provide otherwise and therefore, the American rule does not apply

3   to the administrative record's cost.

4        Finally, regardless of which party pays the administrative

5   record's cost, the prevailing party will be able to recover these

6   costs to the extent permissible under Federal Rule of Civil

7   Procedure 54, 28 U.S.C. 1920, and the case law interpreting this

8   rule and statute.  Therefore, Rule 10.6.2 does not usurp the

9   power of the Court to award most if not all costs, including most

10  labor costs, to the prevailing party when the issue is properly

11  presented to the Court for determination.  See, e.g., Tahoe

12  Tavern Prop. Owners Ass'n v. U.S. Forest Serv., CIV. S06-407

13  LKK/GGH, 2007 WL 1725494, at *2 (E.D. Cal. June 14, 2007)

14  (denying labor costs associated with preparing the administrative

15  record); Conservation Cong. v. U.S. Forest Serv., 208-CV-02483-

16  GEB-DAD, 2010 WL 2557183, at *1 (E.D. Cal. June 21, 2010)

17  (awarding labor costs associated with making copies of the

18  administrative record); League to Save Lake Tahoe v. Tahoe Reg'l

19  Planning Agency, 3:09-CV-478-RCJ-RAM, 2012 WL 3206412, at *2 (D.

20  Nev. Aug. 3, 2012) (awarding labor costs related to work

21  completed by associates, paralegals, and support staff on the

22  administrative record but not professionals).

23       Accordingly, the Court finds that TRPA had the authority to

24  adopt Rule 10.6.2.[2]

25  _____
    [2] Defendant also argues that Plaintiffs' challenge to Rule 10.6.2
26  is time barred.  This argument appears for the first time in the
    reply and Plaintiffs have not had the opportunity to respond;
27  therefore, the Court does not address it.  See Bazuaye v. INS, 79
    F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time
28  in the reply brief are waived."); Ass'n of Irritated Residents v.

9

1          (b)   Failure to Prosecute

2     Defendant argues that Plaintiffs refusal to pay for the

3 record is a failure to prosecute.  Plaintiffs have stated that if

4 ordered to do so, they will pay for the record and therefore,

5 there is no failure to prosecute but merely a legitimate

6 disagreement on costs.  Opp. at 11.  In the reply, Defendant

7 argues that the Court should order Plaintiffs to comply with Rule

8 10.6.2 with a 15-day deadline for submitting payment and appears

9 to abandon its failure to prosecute argument at this time.  Reply

10 at 1, 4.

11     Accordingly, because the Court has found that Rule 10.6.2 is

12 valid, the Court orders Plaintiffs to pay the fee for the

13 administrative record within 15 days from the date of this Order

14 and the Court need not reach the merits of the failure to

15 prosecute argument at this time.

16          2.   State Law Claims

17     Defendant argues that the Court should dismiss Plaintiffs'

18 state law claims for lack of subject matter jurisdiction and

19 because they fail to state a claim. Plaintiffs contend that the

20 state law claims should not be dismissed because the Compact does

21 not preempt its state law counterparts and it is unnecessary for

22 the Court to decide now whether Plaintiffs properly present state

23 law claims.

24     Congressional consent transformed the Compact into federal

25 law.  Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l

26 _____

27 C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal.
   2006) ("It is inappropriate to consider arguments raised for the
28 first time in a reply brief.").

1  Planning Agency, 24 F. Supp. 2d 1062, 1068 (E.D. Cal. 1998).

2  Consequently, interpretation of the Compact is a matter of

3  federal law not state law.  See League to Save Lake Tahoe v.

4  Tahoe Reg'l Planning Agency, 507 F.2d 517, 523 (9th Cir. 1974)

5  ("The Supreme Court has made it clear that the construction of an

6  interstate compact is a matter of federal law, not the law of the

7  party states.")  Moreover, as federal law, TRPA preempts state

8  law and state constitutional provisions.  See Jacobson v. Tahoe

9  Reg'l Planning Agency, 566 F.2d 1353, 1358 (9th Cir. 1977) aff'd

10  in part, rev'd in part Lake Country Estates, Inc. v. Tahoe Reg'l

11  Planning Agency, 440 U.S. 391 (1979); Lake Tahoe Watercraft

12  Recreation Ass'n, 24 F. Supp. 2d at 1069.  "The only exception to

13  this rule is where a compact specifically reserves the right of

14  the state to impose state law on the compact organization."  Lake

15  Tahoe Watercraft Recreation Ass'n, 24 F. Supp. 2d at 1069.

16      Because congressional consent transformed the Compact into

17  federal law, the Compact cannot be understood as both federal and

18  state law; it "is a matter of federal law, not the law of the

19  party states."  League to Save Lake Tahoe, 507 F.2d at 523.

20  Therefore, no equivalent state law claims exist.  Additionally,

21  if there are separate state law provisions, they are preempted by

22  the Compact unless the Compact specifically reserves the right of

23  the state to impose state law on TRPA, which neither party here

24  has claimed.  Finally, Plaintiffs argue that it is unnecessary

25  for the Court to decide now whether Plaintiffs properly present

26  state law claims.  However, they have provided no case law or any

27  persuasive reason for delaying this determination.

28

1   Accordingly, the Court dismisses Plaintiffs' state law

2 claims, which they mention as alternatives to their federal

3 Compact claims in the jurisdictional allegations, Compl. ¶¶ 8-10,

4 and the request for relief, Compl. at 32:23-25.  Consequently, if

5 Plaintiffs ultimately prevail on any Compact claim, attorneys'

6 fees under California state law will not be available.  Opp. at

7 25.  Because Plaintiffs cannot allege valid state law claims, the

8 complaint cannot be saved by amendment and therefore granting

9 leave to amend would be futile.

10          3.   Plaintiffs' First Cause of Action

11   Defendant seeks to dismiss Plaintiffs' first claim for

12 improper delegation of Defendant's project review and approval

13 duties to local governments because Plaintiffs lack standing and

14 the claim is not ripe.  Defendants argue that Plaintiffs lack

15 standing because they have not alleged any injury arising from

16 the RPU's provision authorizing the delegation of project review.

17 Plaintiffs claim that they have organizational standing and

18 independent standing.

19          (a)  Organizational Standing

20   An organization has standing to bring suit on behalf of its

21 members when "(a) its members would otherwise have standing to

22 sue in their own right; (b) the interests it seeks to protect are

23 germane to the organization's purposes; and (c) neither the claim

24 asserted nor the relief requested requires the participation of

25 individual members in the lawsuit."  Ecological Rights Found. v.

26 Pac. Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000) (citations

27 omitted).  Individual members have standing if they can

28 demonstrate that an actual or threatened injury exists, which is

                              12

1    fairly traceable to the challenged action, and that such injury

2    is likely to be redressed by a favorable decision.   Id.

3    (citations omitted).

4         In this case, the parties dispute Plaintiffs' individual

5    members' standing, in particular, whether Plaintiffs have

6    sufficiently alleged a concrete injury in fact.  Mot. at 19; Opp.

7    at 1.  "The 'injury in fact' requirement in environmental cases

8    is satisfied if an individual adequately shows that she has an

9    aesthetic or recreational interest in a particular place, or

10   animal, or plant species and that that interest is impaired by a

11   defendant's conduct."  Ecological Rights Found., 230 F.3d at

12   1147.  In addition, "an increased risk of harm can itself be

13   injury in fact sufficient for standing."  Ecological Rights

14   Found., 230 F.3d at 1151.

15        To establish injury here, Plaintiffs have offered

16   declarations from several of their members.  The members declare

17   that they live, work, or recreate around the area protected by

18   the Compact—the Basin. Declaration of Laurel W. Ames, Doc. #14,

19   ("Ames Decl.") at ¶¶ 2-4, 14; Declaration of Jennifer Quashnick,

20   Doc. #14, ("Quashnick Decl.") at ¶¶ 2, 5-6, 27-29.  Although

21   Plaintiffs have shown that they have an interest in the area, it

22   is unclear how TRPA's delegation of project review will impair

23   their interest or even increase the risk of harm.  The delegation

24   itself does not increase development in the area or authorize

25   more projects.  Plaintiffs mention an increase in development in

26   the region will increase population and traffic, but those

27   alleged harms are a result of the RPU itself not TRPA's

28   delegation power.  See Opp. at 14; Compl. ¶ 6.  Even if there is

13

1  a harm to their interest, Plaintiffs have failed to allege a

2  causal connection between the harm to their interest and the

3  TRPA's delegation power.  Cf. League to Save Lake Tahoe v. City

4  of S. Lake Tahoe, 2:11-CV-01648-GEB, 2012 WL 170170, at *7 (E.D.

5  Cal. Jan. 19, 2012) ("However, this argument and the allegations

6  in the League's FAC fail to identify a causal connection between

7  the [harm to the League members' property values or

8  environmental, aesthetic, and recreational interests] and [the

9  mere existence of inconsistent provisions in the General Plan

10  Update].") (citation and internal quotations omitted).

11      Moreover, relying on Summers v. Earth Island Institute, 555

12  U.S. 488, 493 (2009), and Clapper v. Amnesty Int'l USA, 133 S.Ct.

13  1138, 1150 (2013), Defendant argues that Plaintiffs' alleged

14  injury is hypothetical and speculative because RPU only sets

15  criteria for future delegation but it does not itself result in

16  any delegation.  Mot. at 19-20.  In Clapper, the Supreme Court

17  held that the plaintiffs' alleged harm was not "certainly

18  impending" because they had no evidence that the government would

19  target their communications under 50 U.S.C. § 1881a of the

20  Foreign Intelligence Surveillance Act, which merely authorized

21  surveillance and did not mandate it; therefore, the plaintiffs'

22  allegations were based on "a speculative chain of possibilities."

23  Clapper, 133 S.Ct. at 1150.  Similarly, in Summer, the Supreme

24  Court held that the plaintiffs did not have standing because

25  plaintiffs' individual members' vague desire to return to the

26  geographical area without concrete plans was "insufficient to

27  satisfy the requirement of imminent injury."  Summers v. Earth

28  Island Inst., 555 U.S. 488, 495-96 (2009).  In this case,

1  Plaintiffs argue that the delegation is imminent because at least

2  one county, Douglas County, is in the process of drafting a

3  Memorandum of Understanding ("MOU"), which delegates TRPA's

4  project duties for certain projects.  Park Decl., Ex. C at 1, Ex.

5  D at 7; Ames Decl., Ex. A at 13-14.  However, TRPA's approval of

6  the MOU is not scheduled until July 2013; therefore, there is

7  still the possibility that TRPA may reject the MOU.  Id.

8       Plaintiffs also argue that at least five local governments

9  are preparing area plans and "[a]fter TRPA finds that an Area

10  Plan is in conformance with the Regional Plan, TRPA and the lead

11  agency shall enter into a [MOU] that clearly specifies the extent

12  to which the activities within the Area Plan are delegated or

13  exempt from TRPA review and approval."  Code § 13.7.1, Ex. B

14  attached to Wilkins Decl., at 13.  However, as with the MOU, TRPA

15  approval is still necessary.  Therefore, Plaintiffs have not

16  alleged a concrete injury because delegation is not certainly

17  impending.

18       Accordingly, the Court finds that the Plaintiffs have not

19  sufficiently alleged organizational standing.

20            (b)   Independent Standing

21       An organization suing on its own behalf can establish an

22  injury when it suffered "both a diversion of its resources and a

23  frustration of its mission."  Fair Hous. of Marin v. Combs, 285

24  F.3d 899, 905 (9th Cir. 2002).

25       Plaintiffs argue that because they are required to go

26  through a burdensome process of administrative remedy exhaustion

27  at the local government level, pay an appeal fee, and present a

28  statement within 15 days of the local government decision before

1    they can obtain TRPA review of a project, they have to divert

2    resources from educating members about the area.  Opp. at 21-22.

3    Defendants argue that no delegation or appeal has occurred and

4    therefore it is speculative.  Reply at 9.  Because no delegation

5    or appeal has occurred and they may possibly not occur, as

6    mentioned above, the Court finds that Plaintiffs have not yet

7    suffered an injury.

8        Accordingly, the Court finds that Plaintiffs do not have

9    standing to bring their first cause of action for delegation of

10   project review and approval duties.  Because Plaintiffs do not

11   have standing, the Court need not address whether Plaintiffs'

12   claim is ripe; however, the Court notes that the ripeness inquiry

13   coincides with standing's injury-in-fact prong.  Sacks v. Office

14   of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006) ("In

15   many cases, the constitutional component of the ripeness inquiry

16   coincides squarely with standing's injury in fact prong.")

17   (citations and internal quotation marks omitted).  The Court

18   dismisses Plaintiffs' first cause of action without prejudice to

19   allow Plaintiffs to bring this claim when delegation is certainly

20   impending.  Frigard v. United States, 862 F.2d 201, 204 (9th Cir.

21   1988) ("Ordinarily, a case dismissed for lack of subject matter

22   jurisdiction should be dismissed without prejudice so that a

23   plaintiff may reassert [its] claims in a competent court.")

24            4.   Plaintiffs' Second Cause of Action

25       Defendant moves to dismiss Plaintiffs' second cause of

26   action for failure to state a claim.  Plaintiffs argue that it

27   does state a claim and Defendant's arguments are premature.

28       In Plaintiffs' second cause of action, they allege that the

1    RPU violates the Compact Article VI(a) ("Article VI(a)") because

2    its implementing ordinances fail to establish a "minimum standard

3    applicable throughout the region" related to the protection of

4    soil and water resources.  Compl. ¶¶ 78-80.  Article VI(a)

5    provides, "The governing body shall adopt all necessary

6    ordinances, rules, and regulations to effectuate the adopted

7    regional plan.  Except as otherwise provided in this compact,

8    every such ordinance, rule, or regulation shall establish a

9    minimum standard applicable throughout the region."  Compact,

10   Art. VI(a).

11        Defendant argues that Article VI(a) does not specify any

12   minimum performance requirements for the Regional Plan or its

13   implementing regulations because the requirements are set forth

14   in Article V and therefore, Plaintiffs' second cause action does

15   not state a cognizable claim.  Mot. at 23.  However, as

16   Plaintiffs point out, this argument seems to be based on a

17   misreading of the claim.  Plaintiffs' allegation is that the RPU

18   does not establish minimum requirements on soil and water

19   resources throughout the region as Article VI(a) requires, not

20   that the RPU does not meet the minimum performance requirements

21   set forth in Article VI(a).

22        In the Reply, Defendant argues that the RPU complies with

23   Article VI(a) because it provides further minimum standards

24   applicable throughout the region and that public agencies are

25   only permitted to adopt and enforce requirements equal to or

26   higher than the requirements in the RPU.  Reply at 10.  However,

27   Defendant's argument goes to the merits of the claim (i.e.,

28   whether the RPU fails to establish minimum standards).

17

1 Consequently, the Court finds it inappropriate to address this

2 argument in a motion to dismiss.

3        Accordingly, the Court finds that Plaintiffs have stated a

4 claim and denies Defendant's motion to dismiss Plaintiffs' second

5 cause of action.

6

7                            III. ORDER

8        For the reasons set forth above, the Court GRANTS

9 Defendants' motion to dismiss in part and DENIES in part:  The

10 Court orders Plaintiffs to pay the fee for the administrative

11 record within 15 days from the date of this Order.  The Court

12 GRANTS WITH PREJUDICE Defendants' motion to dismiss Plaintiffs'

13 state law claims.  The Court DISMISSES WITHOUT PREJUDICE

14 Plaintiffs' first cause of action.  The Court denies Defendant's

15 motion to dismiss Plaintiffs' second cause of action.

16        IT IS SO ORDERED.

17 Dated: June 14, 2013

18                         _____
                          JOHN A. MENDEZ,
                          UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28