1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                       EASTERN DISTRICT OF CALIFORNIA

9

10   SIERRA CLUB and FRIENDS OF          No.  13-cv-00267 JAM-EFB
     THE WEST SHORE,
11
                    Plaintiffs,
12                                        **ORDER GRANTING DEFENDANT'S
          v.                              MOTION TO DISMISS IN PART AND
13                                        DENYING IN PART**
     TAHOE REGIONAL PLANNING
14   AGENCY,

15                  Defendant.

16

17        This matter is before the Court on Defendant Tahoe Regional

18   Planning Agency's ("Defendant" or "TRPA") Motion to Dismiss

19   Plaintiffs' Complaint (Doc. #7).  Plaintiffs Sierra Club and

20   Friends of the West Shore (Collectively "Plaintiffs") oppose the

21   motion (Doc. #14).  Defendant replied (Doc. #16).[1]  For the

22   following reasons, Defendant's Motion to Dismiss is GRANTED in

23   part and DENIED in part.

24

25

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for May 15, 2013.

                                    1

1              I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          Plaintiffs filed their complaint with this Court on February

3    11, 2013 (Doc. #1).  Plaintiffs allege five causes of action

4    against Defendant: (1) Delegation of TRPA's project approval and

5    review duties in violation of the Tahoe Regional Planning Compact

6    ("Compact"); (2) failure of the regional plan to establish and

7    ensure compliance with minimum regional standards; (3) failure to

8    properly make threshold findings pursuant to the Compact and code

9    sections 4.5 and 4.6; (4) failure to adequately analyze

10   significant impacts in violation of the Compact; and (5) failure

11   to mitigate significant impacts in violation of the Compact.

12   Compl. ¶¶ 72-102.  Defendant moves to dismiss Plaintiffs'

13   complaint for failure to prosecute, moves to dismiss Plaintiffs'

14   state law claims, and moves to dismiss the first and second

15   causes of action.  Plaintiffs' state law claims are not distinct

16   causes of action; instead, they are mentioned as alternatives to

17   Plaintiffs' federal Compact claims in the jurisdictional

18   allegations, Compl. ¶¶ 8-10, and request for relief, Compl. at

19   32:23-25.

20        A.   The Compact

21        In 1968, California and Nevada entered into the Tahoe

22   Regional Planning Compact, Pub. L. No. 95-551, 94 Stat. 3233

23   (1980); Cal. Gov. Code §§ 66800, 66901; Nev. Rev. Stat.

24   §§ 277.200 et seq. ("Compact"), designed to protect the natural

25   resources and control development in the Lake Tahoe Basin

26   ("Basin").  Compl. ¶¶ 1-2, 8.  The Compact created the Tahoe

27   Regional Planning Agency ("TRPA") to serve as the region's land

28   use and environmental protection agency.  Id. ¶ 1.  The Compact

                                     2

became effective by congressional authorization in December 1969. Id.  In 1980, the initial Compact was amended to increase the level of environmental protection for the Basin; Congress authorized the amendments in December 1980.  Id.  In 1987, a Regional Plan was adopted pursuant to the Compact to strengthen its provisions.  Id. ¶ 2.

    B.    Regional Plan Update

    Beginning in 2010, TRPA undertook the Regional Plan Update ("RPU") to revise the 1987 Regional Plan.  Id. ¶ 3.  On December 12, 2012, TRPA adopted the RPU.  Id. ¶ 4.  Under the RPU, TRPA has authority to delegate to local governments TRPA's project review and approval duties.  Id.  The RPU also opens over 300 acres of undeveloped land to "resort recreation" development, expanding Tahoe's urban boundary; allows up to 3,200 new residential units and 200,000 square feet of new commercial floor area; and allows increased concentration of coverage closer to the Lake in urban core areas.  Id. ¶ 6.


                        II.   OPINION

   A.   Legal Standard

         1.    Failure to Prosecute

    Courts have discretion to dismiss a case for failure to prosecute "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order."  Fed. R. Civ. P. 41(b). "[D]ismissal for lack of prosecution must be supported by a showing of unreasonable delay," which, if shown, "creates a presumption of injury to the defense."  Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986) (citations omitted).  However,

                              3

1  dismissal is a harsh penalty and is to be imposed only in extreme

2  circumstances.  Id. (citing Raiford v. Pounds, 640 F.2d 944, 945

3  (9th Cir. 1981)).

4      To determine whether dismissal with prejudice is warranted

5  for failure to prosecute, the Court must weigh the following

6  factors: "(1) the public's interest in expeditious resolution of

7  litigation; (2) the Court's need to manage its docket; (3) the

8  risk of prejudice to defendants/ respondents; (4) the

9  availability of less drastic alternatives; and (5) the public

10 policy favoring disposition of cases on their merits."

11 Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002) (citing

12 Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

13              2.   Motion to Dismiss

14     A party may move to dismiss an action for failure to state a

15 claim upon which relief can be granted pursuant to Federal Rule

16 of Civil Procedure 12(b)(6).  In considering a motion to dismiss,

17 the court must accept the allegations in the complaint as true

18 and draw all reasonable inferences in favor of the plaintiff.

19 Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

20 grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto,

21 405 U.S. 319, 322 (1972).  Assertions that are mere "legal

22 conclusions," however, are not entitled to the assumption of

23 truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

24 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive

25 a motion to dismiss, a plaintiff needs to plead "enough facts to

26 state a claim to relief that is plausible on its face."  Twombly,

27 550 U.S. at 570.  Dismissal is appropriate where the plaintiff

28 fails to state a claim supportable by a cognizable legal theory.

1   Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th

2   Cir. 1990).

3        Upon granting a motion to dismiss for failure to state a

4   claim, the court has discretion to allow leave to amend the

5   complaint pursuant to Federal Rule of Civil Procedure 15(a).

6   "Dismissal with prejudice and without leave to amend is not

7   appropriate unless it is clear . . . that the complaint could not

8   be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,

9   Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

10        B.   Judicial Notice

11        Both parties request judicial notice.

12             1.   Defendant's request

13        Defendant requests judicial notice of the Compact, TRPA's

14   Code of Ordinance ("Code"), and select Articles of TRPA's Rule of

15   Procedure.  See Def.'s Request for Judicial Notice ("DRJN"), Exs.

16   A-C attached to Declaration of Howard F. Wilkins ("Wilkins

17   Decl."), Doc. #11.  Plaintiffs do not oppose Defendant's request.

18   Exhibits A, B, and C are appropriate for judicial notice because

19   they are government publications, public records, and their

20   contents are "not subject to reasonable dispute."  Fed. R. Evid.

21   201(b); see Santa Monica Food Not Bombs v. City of Santa Monica,

22   450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (noting that judicial

23   notice may be taken of public records); Long Beach Area Peace

24   Network v. City of Long Beach, 522 F.3d 1010, 1025, n. 4 (9th

25   Cir. 2008) (judicial notice taken of city ordinance and

26   definitions contained in administrative regulation).

27        Accordingly, the Court grants Defendant's request for

28   judicial notice.

1                    2.    Plaintiffs' Request

2          Plaintiffs request judicial notice of Exhibits A through G

3    to the Declaration of Wendy S. Park ("Park Declaration") and

4    Exhibit A to the Declaration of Laurel W. Ames ("Ames

5    Declaration").  Pls.' Request for Judicial Notice ("PRJN"), Doc.

6    #14-6, at 1. Defendant opposes Plaintiffs' request on relevancy

7    grounds.  Def.'s Opposition to PRJN, Doc. #16, at 1-3.  Exhibits

8    A and B attached to the Park Declaration involve record

9    preparation costs for an unrelated action and therefore are not

10   relevant as to whether TRPA had authority to adopt TRPA Rules of

11   Procedure 10.6.2, which is purely a legal question.

12         Exhibits C through G to the Park Declaration and Exhibit A

13   to the Ames Declaration are public records related to ongoing

14   local area planning efforts, TRPA Rules of Procedure, and TRPA

15   Regional Plan.  The Court finds these public records relevant to

16   determine Plaintiffs' standing and appropriate for judicial

17   notice.  Santa Monica Food Not Bombs, 450 F.3d at 1025 n.2.

18         Accordingly, the Court grants Plaintiffs' request for

19   judicial notice as to Exhibits C through G to the Park

20   Declaration and Exhibit A to the Ames Declaration but denies

21   Plaintiffs' request as to Exhibits A and B attached to the Park

22   Declaration.

23         C.    Evidentiary Objections

24         Defendant objects to several sections of the declarations

25   offered by Plaintiffs.  Objections to Ames, Quashnick, Anderson,

26   Gearhart, and Park Declarations, Doc. #16.  Plaintiffs filed a

27   response to these objections.  Response to Reply, Doc. #17.

28         For the reasons stated above, Defendant's relevancy

1  objections as to local area planning efforts are overruled

2  because the Court finds the information relevant and Defendant's

3  relevancy objection as to the costs in an unrelated case is

4  sustained.  Finally, the Court need not address all other

5  objections because the Court did not rely on any portion of the

6  evidence to which Defendant objected.

7      Accordingly, the Court sustains in part and overrules in

8  part Defendant's evidentiary objections.

9          D.    Discussion

10              1.    Dismissal for Failure to Pay for the
                      Administrative Record

11

12      Defendant argues that Plaintiffs have failed to prosecute

13  this case diligently by refusing to pay a fee to Defendant for

14  the preparation of the administrative record.  Plaintiffs argue

15  that they are not required to pay the fee and even if they are

16  required, they have not failed to prosecute their case to warrant

17  dismissal.  Both parties agree that the administrative record is

18  essential.  Mot. at 10; Opp. at 5, 10.

19                  (a)   Costs for the Administrative Record

20      TRPA Rule of Procedure 10.6.2 ("Rule 10.6.2") provides as

21  follows:

22          Any Agency cost related to preparation of the
            administrative record, including but not limited to
23          the use of resources or staff time to gather
            documents, organize and create an index to the
24          administrative record, conduct a privilege review of
            the administrative record, shall be borne by the
25          plaintiff(s) in the legal action.

26  Rule 10.6.2, TRPA's Rule of Procedure, Ex. C attached to Wilkins

27  Decl., Doc. #11, at 10-1.  Defendant claims that the Compact

28  authorizes such fee recovery: "The agency may fix and collect

7

1  reasonable fees for any service rendered by it."  Compact, Art.

2  VIII(b) ("Article VIII(b)"), Ex. A attached to Wilkins Decl.,

3  Doc. #11, at 18.

4      Plaintiffs argue that TRPA lacked authority to adopt Rule

5  10.6.2 and Rule 10.6.2 conflicts with the American Rule on costs,

6  which typically requires parties to bear their own costs in

7  litigation.  Plaintiffs rely on the definition of "service,"

8  which, from the definitions provided by Plaintiffs, generally

9  means work done for others.  Opp. at 6.  However, this definition

10  does not prevent TRPA from adopting Rule 10.6.2 because it is

11  broad enough to encompass production of an administrative record

12  for plaintiffs in litigation.

13      As Plaintiffs point out, TRPA's authority to adopt Rule

14  10.6.2 could have been clearer if Article VIII(b) were located in

15  the litigation section of the Compact.  Nevertheless, because

16  Article VIII(b) is located in the Finances section, it gives TRPA

17  broad authority to adopt several similar rules.  See, e.g., TRPA

18  Rule of Procedure 10.7.1 ("Whenever the Agency performs services

19  for members of the public . . . the Agency shall collect a

20  reasonable charge for the purpose of recovering costs to the

21  Agency."); TRPA Rule of Procedure 10.8.1 ("Fee schedules for

22  project review and preparation of environmental documents shall

23  be set by resolution of the Body.")

24      Moreover, even though "[u]nder the American rule, litigants

25  ordinarily are required to bear the expenses of their

26  litigation," this is only a default rule that may be altered if

27  "a statute or private agreement provides otherwise."  Grove v.

28  Wells Fargo Fin. California, Inc., 606 F.3d 577, 579 (9th Cir.

1    2010).   Here, Article VIII(b) in conjunction with Rule 10.6.2

2    provide otherwise and therefore, the American rule does not apply

3    to the administrative record's cost.

4        Finally, regardless of which party pays the administrative

5    record's cost, the prevailing party will be able to recover these

6    costs to the extent permissible under Federal Rule of Civil

7    Procedure 54, 28 U.S.C. 1920, and the case law interpreting this

8    rule and statute.   Therefore, Rule 10.6.2 does not usurp the

9    power of the Court to award most if not all costs, including most

10   labor costs, to the prevailing party when the issue is properly

11   presented to the Court for determination.   See, e.g., Tahoe

12   Tavern Prop. Owners Ass'n v. U.S. Forest Serv., CIV. S06-407

13   LKK/GGH, 2007 WL 1725494, at *2 (E.D. Cal. June 14, 2007)

14   (denying labor costs associated with preparing the administrative

15   record); Conservation Cong. v. U.S. Forest Serv., 208-CV-02483-

16   GEB-DAD, 2010 WL 2557183, at *1 (E.D. Cal. June 21, 2010)

17   (awarding labor costs associated with making copies of the

18   administrative record); League to Save Lake Tahoe v. Tahoe Reg'l

19   Planning Agency, 3:09-CV-478-RCJ-RAM, 2012 WL 3206412, at *2 (D.

20   Nev. Aug. 3, 2012) (awarding labor costs related to work

21   completed by associates, paralegals, and support staff on the

22   administrative record but not professionals).

23       Accordingly, the Court finds that TRPA had the authority to

24   adopt Rule 10.6.2.[2]

---

25   [2] Defendant also argues that Plaintiffs' challenge to Rule 10.6.2
     is time barred.   This argument appears for the first time in the
26   reply and Plaintiffs have not had the opportunity to respond;
     therefore, the Court does not address it.   See Bazuaye v. INS, 79
27   F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time
     in the reply brief are waived."); Ass'n of Irritated Residents v.
28

1                    (b)   Failure to Prosecute

2        Defendant argues that Plaintiffs refusal to pay for the

3   record is a failure to prosecute.  Plaintiffs have stated that if

4   ordered to do so, they will pay for the record and therefore,

5   there is no failure to prosecute but merely a legitimate

6   disagreement on costs.  Opp. at 11.  In the reply, Defendant

7   argues that the Court should order Plaintiffs to comply with Rule

8   10.6.2 with a 15-day deadline for submitting payment and appears

9   to abandon its failure to prosecute argument at this time.  Reply

10  at 1, 4.

11       Accordingly, because the Court has found that Rule 10.6.2 is

12  valid, the Court orders Plaintiffs to pay the fee for the

13  administrative record within 15 days from the date of this Order

14  and the Court need not reach the merits of the failure to

15  prosecute argument at this time.

16                    2.   State Law Claims

17       Defendant argues that the Court should dismiss Plaintiffs'

18  state law claims for lack of subject matter jurisdiction and

19  because they fail to state a claim. Plaintiffs contend that the

20  state law claims should not be dismissed because the Compact does

21  not preempt its state law counterparts and it is unnecessary for

22  the Court to decide now whether Plaintiffs properly present state

23  law claims.

24       Congressional consent transformed the Compact into federal

25  law.  Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l

26  _____

27  C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal.
    2006) ("It is inappropriate to consider arguments raised for the
28  first time in a reply brief.").

1 Planning Agency, 24 F. Supp. 2d 1062, 1068 (E.D. Cal. 1998).

2 Consequently, interpretation of the Compact is a matter of

3 federal law not state law.  See League to Save Lake Tahoe v.

4 Tahoe Reg'l Planning Agency, 507 F.2d 517, 523 (9th Cir. 1974)

5 ("The Supreme Court has made it clear that the construction of an

6 interstate compact is a matter of federal law, not the law of the

7 party states.")  Moreover, as federal law, TRPA preempts state

8 law and state constitutional provisions.  See Jacobson v. Tahoe

9 Reg'l Planning Agency, 566 F.2d 1353, 1358 (9th Cir. 1977) aff'd

10 in part, rev'd in part Lake Country Estates, Inc. v. Tahoe Reg'l

11 Planning Agency, 440 U.S. 391 (1979); Lake Tahoe Watercraft

12 Recreation Ass'n, 24 F. Supp. 2d at 1069.  "The only exception to

13 this rule is where a compact specifically reserves the right of

14 the state to impose state law on the compact organization."  Lake

15 Tahoe Watercraft Recreation Ass'n, 24 F. Supp. 2d at 1069.

16      Because congressional consent transformed the Compact into

17 federal law, the Compact cannot be understood as both federal and

18 state law; it "is a matter of federal law, not the law of the

19 party states."  League to Save Lake Tahoe, 507 F.2d at 523.

20 Therefore, no equivalent state law claims exist.  Additionally,

21 if there are separate state law provisions, they are preempted by

22 the Compact unless the Compact specifically reserves the right of

23 the state to impose state law on TRPA, which neither party here

24 has claimed.  Finally, Plaintiffs argue that it is unnecessary

25 for the Court to decide now whether Plaintiffs properly present

26 state law claims.  However, they have provided no case law or any

27 persuasive reason for delaying this determination.

28

1    Accordingly, the Court dismisses Plaintiffs' state law

2  claims, which they mention as alternatives to their federal

3  Compact claims in the jurisdictional allegations, Compl. ¶¶ 8-10,

4  and the request for relief, Compl. at 32:23-25.  Consequently, if

5  Plaintiffs ultimately prevail on any Compact claim, attorneys'

6  fees under California state law will not be available.  Opp. at

7  25.  Because Plaintiffs cannot allege valid state law claims, the

8  complaint cannot be saved by amendment and therefore granting

9  leave to amend would be futile.

10              3.   Plaintiffs' First Cause of Action

11    Defendant seeks to dismiss Plaintiffs' first claim for

12  improper delegation of Defendant's project review and approval

13  duties to local governments because Plaintiffs lack standing and

14  the claim is not ripe.  Defendants argue that Plaintiffs lack

15  standing because they have not alleged any injury arising from

16  the RPU's provision authorizing the delegation of project review.

17  Plaintiffs claim that they have organizational standing and

18  independent standing.

19              (a)   Organizational Standing

20    An organization has standing to bring suit on behalf of its

21  members when "(a) its members would otherwise have standing to

22  sue in their own right; (b) the interests it seeks to protect are

23  germane to the organization's purposes; and (c) neither the claim

24  asserted nor the relief requested requires the participation of

25  individual members in the lawsuit."  Ecological Rights Found. v.

26  Pac. Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000) (citations

27  omitted).  Individual members have standing if they can

28  demonstrate that an actual or threatened injury exists, which is

1   fairly traceable to the challenged action, and that such injury

2   is likely to be redressed by a favorable decision.  Id.

3   (citations omitted).

4       In this case, the parties dispute Plaintiffs' individual

5   members' standing, in particular, whether Plaintiffs have

6   sufficiently alleged a concrete injury in fact.  Mot. at 19; Opp.

7   at 1.  "The 'injury in fact' requirement in environmental cases

8   is satisfied if an individual adequately shows that she has an

9   aesthetic or recreational interest in a particular place, or

10  animal, or plant species and that that interest is impaired by a

11  defendant's conduct."  Ecological Rights Found., 230 F.3d at

12  1147.  In addition, "an increased risk of harm can itself be

13  injury in fact sufficient for standing."  Ecological Rights

14  Found., 230 F.3d at 1151.

15      To establish injury here, Plaintiffs have offered

16  declarations from several of their members.  The members declare

17  that they live, work, or recreate around the area protected by

18  the Compact—the Basin. Declaration of Laurel W. Ames, Doc. #14,

19  ("Ames Decl.") at ¶¶ 2-4, 14; Declaration of Jennifer Quashnick,

20  Doc. #14, ("Quashnick Decl.") at ¶¶ 2, 5-6, 27-29.  Although

21  Plaintiffs have shown that they have an interest in the area, it

22  is unclear how TRPA's delegation of project review will impair

23  their interest or even increase the risk of harm.  The delegation

24  itself does not increase development in the area or authorize

25  more projects.  Plaintiffs mention an increase in development in

26  the region will increase population and traffic, but those

27  alleged harms are a result of the RPU itself not TRPA's

28  delegation power.  See Opp. at 14; Compl. ¶ 6.  Even if there is

13

1   a harm to their interest, Plaintiffs have failed to allege a

2   causal connection between the harm to their interest and the

3   TRPA's delegation power.  Cf. League to Save Lake Tahoe v. City

4   of S. Lake Tahoe, 2:11-CV-01648-GEB, 2012 WL 170170, at *7 (E.D.

5   Cal. Jan. 19, 2012) ("However, this argument and the allegations

6   in the League's FAC fail to identify a causal connection between

7   the [harm to the League members' property values or

8   environmental, aesthetic, and recreational interests] and [the

9   mere existence of inconsistent provisions in the General Plan

10  Update].") (citation and internal quotations omitted).

11        Moreover, relying on Summers v. Earth Island Institute, 555

12  U.S. 488, 493 (2009), and Clapper v. Amnesty Int'l USA, 133 S.Ct.

13  1138, 1150 (2013), Defendant argues that Plaintiffs' alleged

14  injury is hypothetical and speculative because RPU only sets

15  criteria for future delegation but it does not itself result in

16  any delegation.  Mot. at 19-20.  In Clapper, the Supreme Court

17  held that the plaintiffs' alleged harm was not "certainly

18  impending" because they had no evidence that the government would

19  target their communications under 50 U.S.C. § 1881a of the

20  Foreign Intelligence Surveillance Act, which merely authorized

21  surveillance and did not mandate it; therefore, the plaintiffs'

22  allegations were based on "a speculative chain of possibilities."

23  Clapper, 133 S.Ct. at 1150.  Similarly, in Summer, the Supreme

24  Court held that the plaintiffs did not have standing because

25  plaintiffs' individual members' vague desire to return to the

26  geographical area without concrete plans was "insufficient to

27  satisfy the requirement of imminent injury."  Summers v. Earth

28  Island Inst., 555 U.S. 488, 495-96 (2009).  In this case,

14

1   Plaintiffs argue that the delegation is imminent because at least

2   one county, Douglas County, is in the process of drafting a

3   Memorandum of Understanding ("MOU"), which delegates TRPA's

4   project duties for certain projects.  Park Decl., Ex. C at 1, Ex.

5   D at 7; Ames Decl., Ex. A at 13-14.  However, TRPA's approval of

6   the MOU is not scheduled until July 2013; therefore, there is

7   still the possibility that TRPA may reject the MOU.  Id.

8        Plaintiffs also argue that at least five local governments

9   are preparing area plans and "[a]fter TRPA finds that an Area

10  Plan is in conformance with the Regional Plan, TRPA and the lead

11  agency shall enter into a [MOU] that clearly specifies the extent

12  to which the activities within the Area Plan are delegated or

13  exempt from TRPA review and approval."  Code § 13.7.1, Ex. B

14  attached to Wilkins Decl., at 13.  However, as with the MOU, TRPA

15  approval is still necessary.  Therefore, Plaintiffs have not

16  alleged a concrete injury because delegation is not certainly

17  impending.

18       Accordingly, the Court finds that the Plaintiffs have not

19  sufficiently alleged organizational standing.

20            (b)   Independent Standing

21       An organization suing on its own behalf can establish an

22  injury when it suffered "both a diversion of its resources and a

23  frustration of its mission."  Fair Hous. of Marin v. Combs, 285

24  F.3d 899, 905 (9th Cir. 2002).

25       Plaintiffs argue that because they are required to go

26  through a burdensome process of administrative remedy exhaustion

27  at the local government level, pay an appeal fee, and present a

28  statement within 15 days of the local government decision before

1   they can obtain TRPA review of a project, they have to divert

2   resources from educating members about the area.  Opp. at 21-22.

3   Defendants argue that no delegation or appeal has occurred and

4   therefore it is speculative.  Reply at 9.  Because no delegation

5   or appeal has occurred and they may possibly not occur, as

6   mentioned above, the Court finds that Plaintiffs have not yet

7   suffered an injury.

8        Accordingly, the Court finds that Plaintiffs do not have

9   standing to bring their first cause of action for delegation of

10  project review and approval duties.  Because Plaintiffs do not

11  have standing, the Court need not address whether Plaintiffs'

12  claim is ripe; however, the Court notes that the ripeness inquiry

13  coincides with standing's injury-in-fact prong.  Sacks v. Office

14  of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006) ("In

15  many cases, the constitutional component of the ripeness inquiry

16  coincides squarely with standing's injury in fact prong.")

17  (citations and internal quotation marks omitted).  The Court

18  dismisses Plaintiffs' first cause of action without prejudice to

19  allow Plaintiffs to bring this claim when delegation is certainly

20  impending.  Frigard v. United States, 862 F.2d 201, 204 (9th Cir.

21  1988) ("Ordinarily, a case dismissed for lack of subject matter

22  jurisdiction should be dismissed without prejudice so that a

23  plaintiff may reassert [its] claims in a competent court.")

24                4.   Plaintiffs' Second Cause of Action

25       Defendant moves to dismiss Plaintiffs' second cause of

26  action for failure to state a claim.  Plaintiffs argue that it

27  does state a claim and Defendant's arguments are premature.

28       In Plaintiffs' second cause of action, they allege that the

1  RPU violates the Compact Article VI(a) ("Article VI(a)") because

2  its implementing ordinances fail to establish a "minimum standard

3  applicable throughout the region" related to the protection of

4  soil and water resources.  Compl. ¶¶ 78-80.  Article VI(a)

5  provides, "The governing body shall adopt all necessary

6  ordinances, rules, and regulations to effectuate the adopted

7  regional plan.  Except as otherwise provided in this compact,

8  every such ordinance, rule, or regulation shall establish a

9  minimum standard applicable throughout the region."  Compact,

10  Art. VI(a).

11      Defendant argues that Article VI(a) does not specify any

12  minimum performance requirements for the Regional Plan or its

13  implementing regulations because the requirements are set forth

14  in Article V and therefore, Plaintiffs' second cause action does

15  not state a cognizable claim.  Mot. at 23.  However, as

16  Plaintiffs point out, this argument seems to be based on a

17  misreading of the claim.  Plaintiffs' allegation is that the RPU

18  does not establish minimum requirements on soil and water

19  resources throughout the region as Article VI(a) requires, not

20  that the RPU does not meet the minimum performance requirements

21  set forth in Article VI(a).

22      In the Reply, Defendant argues that the RPU complies with

23  Article VI(a) because it provides further minimum standards

24  applicable throughout the region and that public agencies are

25  only permitted to adopt and enforce requirements equal to or

26  higher than the requirements in the RPU.  Reply at 10.  However,

27  Defendant's argument goes to the merits of the claim (i.e.,

28  whether the RPU fails to establish minimum standards).

1  Consequently, the Court finds it inappropriate to address this

2  argument in a motion to dismiss.

3      Accordingly, the Court finds that Plaintiffs have stated a

4  claim and denies Defendant's motion to dismiss Plaintiffs' second

5  cause of action.

6

7                          III. ORDER

8      For the reasons set forth above, the Court GRANTS

9  Defendants' motion to dismiss in part and DENIES in part:  The

10  Court orders Plaintiffs to pay the fee for the administrative

11  record within 15 days from the date of this Order.  The Court

12  GRANTS WITH PREJUDICE Defendants' motion to dismiss Plaintiffs'

13  state law claims.  The Court DISMISSES WITHOUT PREJUDICE

14  Plaintiffs' first cause of action.  The Court denies Defendant's

15  motion to dismiss Plaintiffs' second cause of action.

16      IT IS SO ORDERED.

17  Dated: June 14, 2013

    _____

18  JOHN A. MENDEZ,
    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28