THOMAS WATSON, SBN 144457
NIRA FEELEY, SBN 254523
City Attorney's Office for the City of South Lake Tahoe
1901 Airport Rd.
South Lake Tahoe, CA 96150
(530) 542-6046
twatson@cityofslt.us
nfeeley@cityofslt.us

*Attorneys for Amici parties,*
*The City of South Lake Tahoe, California;*
*El Dorado County, California; Placer County,*
*California; Douglas County, Nevada;*
*Washoe County, Nevada; and*
*Carson City and County, Nevada*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| SIERRA CLUB and FRIENDS OF THE WEST SHORE,<br><br>Plaintiffs,<br><br>vs.<br><br>TAHOE REGIONAL PLANNING AGENCY,<br><br>Defendant. | Case No.:  2:13-CV-00267-JAM-EFB<br><br>**APPLICATION BY THE CITY OF SOUTH LAKE TAHOE, CALIFORNIA; EL DORADO COUNTY, CALIFORNIA; PLACER COUNTY, CALIFORNIA; DOUGLAS COUNTY, NEVADA; WASHOE COUNTY, NEVADA; AND CARSON CITY, NEVADA, A CONSOLIDATED MUNICIPALITY FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANT, TAHOE REGIONAL PLANNING AGENCY; PROPOSED AMICUS BRIEF** |

## I.   APPLICATION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT TAHOE REGIONAL PLANNING AGENCY

The City of South Lake Tahoe, California; El Dorado County, California; Placer County, California; Douglas County, Nevada; Washoe County, Nevada; and Carson City and County, Nevada (hereinafter "the local jurisdictions") respectfully request leave to file an amicus brief in support of Defendant Tahoe Regional Planning Agency (TRPA).  As explained below, the entities requesting leave to file this brief are the six local jurisdictions subject to the Tahoe Regional Planning Compact ("Compact").  Each local jurisdiction or a portion of the local jurisdiction is located within the Lake Tahoe Basin and subject to the purview of TRPA's Regional Plan Update (RPU) which was approved in December 2012.  Each of the local jurisdictions is a participating member of the governing body of the TRPA[1].

The outcome of this litigation has direct ramifications on the local jurisdictions, as each is charged with representing the public interest, general welfare, health, and safety in the physical development of the respective jurisdiction for the benefit of its citizens, residents and visitors.[2]  The local jurisdictions have a significant interest in this litigation because they risk losing an explicit power recognized by the Compact and incorporated into the RPU[3] and implemented in the TRPA Code of Ordinances:  "Whenever possible without diminishing the effectiveness of the regional plan, the ordinances, rules regulations and policies shall be confined to matters which are general and regional in application, leaving to the jurisdiction of the respective States, counties and cities the enactment of specific and local ordinances, rules, regulations and policies which conform to the regional plan."[4]

---

[1] TRPA Compact Art. III(a)(1)-(2) [AR081289-90]
[2] TRPA Compact Art. I(a)(8) [AR081287]; Cal. Gov. Code § 65800; Nevada Revised Statutes 278.020
[3] TRPA Compact Art. VI(a) [AR081296].
[4] TRPA Compact Art. VI(a) [AR081296].

1

If Plaintiffs' claims are accepted, it will undermine the purpose of the TRPA Compact, impede the local jurisdictions' obligations to implement measures needed to improve Lake clarity, and disallow local government's responsiveness to the unique circumstances of each local jurisdiction. Citizens within the local jurisdictions will not reap the benefits of the RPU, including redevelopment of blight, streamlined local planning, creation of livable and thriving communities, restoration of environmentally sensitive lands to open space, and increased clarity of Lake Tahoe's pristine blue waters. Like the Defendant in this case, the local jurisdictions recognize the RPU is the culmination of nine years of collaborative planning in which all of the local jurisdictions participated. The RPU provides extraordinary environmental and socioeconomic public benefits to the communities within and beyond the Lake Tahoe Basin.

The local jurisdictions agree with the legal arguments advanced by Defendant in its Cross-Motion for Summary Judgment.

## II.   INTEREST OF AMICI CURIAE

The local jurisdictions are those governmental entities located within the "region"[5] as defined by the Compact and subject to the purview of the RPU. The local jurisdictions represent nearly 55,000[6] year-round residents who inhabit the approximately 202,000[7] land acres of the region. The local jurisdictions have contributed to and commented on the RPU throughout the past nine years. The local jurisdictions have a significant interest in community planning, development and the unique environmental and ecological values of Lake Tahoe, which are irreplaceable.[8] Each jurisdiction sees both direct and indirect benefits from increased clarity of Lake Tahoe, and share obligations with Defendant to achieve and maintain clarity goals. The local jurisdictions have a direct interest in the Area Plans that the plaintiffs seek to set aside along with the RPU. The Court's decision in this case

---

[5] TRPA Compact Art. (II)(a) Definitions [AR081288].
[6] 2011 TEVAL at pgs A-1 to 2 [AR008811-12]
[7] RPU DEIS, Section 2.2 at pg 2-1 [AR011557]
[8] TRPA Compact Art. I(a)(3) [AR081287]

will have a direct impact on the local jurisdictions and their citizens.  For these reasons, the local

jurisdictions request leave to participate in these proceedings as amici parties.


Dated:  November 26, 2013                              Respectfully submitted,


                                                      THOMAS WATSON
                                                      City Attorney


                                                        /s/ Nira Feeley
                                                      NIRA FEELEY
                                                      Assistant City Attorney
                                                      *City of South Lake Tahoe*

APPLICATION FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANT, TAHOE REGIONAL PLANNING
AGENCY; PROPOSED AMICUS BRIEF                                    CASE No. 13CV00267

## AMICUS BRIEF

## I.    INTRODUCTION

The local jurisdictions are those three California and three Nevada local governing entities located in the Lake Tahoe Basin and subject to the TRPA Compact, the Tahoe Regional Planning Agency (TRPA) Regional Plan, implementing ordinances, rules and regulations.  The local jurisdictions include the City of South Lake Tahoe, California; El Dorado County, California; Placer County, California; Douglas County, Nevada; Washoe County, Nevada; and Carson City, Nevada, a Consolidated Municipality.  As stated in the Motion for Leave to file this Amicus Brief, the local jurisdictions have a direct interest in the outcome of this litigation, and incorporate by reference said Motion, including the stated interests of the Amicus Curiae.

## II.    ARGUMENT

A review of the whole record indicates that adoption of the RPU was not arbitrary and capricious or lacking substantial evidentiary support.  Rather, adoption of the RPU is supported by the law and the record.  The RPU and implementing ordinances are supported by the Environmental Impact Study (EIS), Threshold findings, stakeholder statements and the TRPA Compact.

The local jurisdictions support TRPA's position and request that this Court uphold the adoption of the RPU and implementing ordinances, deny all relief requested by the Sierra Club (SC) and Friends of the West Shore (FOWS) (collectively Plaintiffs) and grant TRPA's Cross-Motion for Summary Judgment.

The Compact created a regional agency, TRPA, with plenary land use planning and regulatory authority but not without also providing that local governments be allowed to establish "specific and local ordinances, rules, regulations and policies which conform to the regional plan."[9]  The local

---

[9] TRPA Compact Art. VI(a) [AR081296]

1

jurisdictions take seriously their responsibility to meet the standards of the Regional Plan, and for decades local jurisdictions have served as a critical link in implementing the Regional Plan's environmental, land use, and transportation strategies designed to meet threshold goals.

Even in 1980, Congress recognized the public interests and investments in the region are substantial.[10]  These benefits to the public's interests and investments will primarily be realized by allowing the local jurisdictions to develop and implement local Area Plans that can be tailored locally for effective and efficient restoration of Lake Tahoe's water quality and clarity as required of them by Lake Tahoe's Total Maximum Daily Load (TMDL).  The RPU recognizes requirements of the U.S. Environmental Protection Agency (USEPA) and the authorities of California and Nevada in establishing the TMDL and regulating the local jurisdictions under delegated Clean Water Act authority.[11]  TRPA developed the Regional Plan Update (RPU) to work together with the TMDL through the RPU's land use and transportation policies that make it more feasible for local jurisdictions to comply with the TMDL requirements while also meeting other regional environmental threshold standards.[12]  The local jurisdictions collaborated with TRPA throughout the development of the 2012 RPU and as adopted will be able to tailor local plans and their implementation to the desired community character of local residents as well as to the newly established regulatory requirements of TMDL implementation. See *infra* II.A.

As this brief explains, the RPU provides land use and other measures essential to meet the local jurisdictions' obligations to implement the TMDL and meet TMDL regulatory load reduction targets, while concurrently allowing the local jurisdictions to transition to a planning and permitting system that conforms TRPA, local, state, and federal requirements all aimed at restoring Lake Tahoe's

---

[10] TRPA Compact Art. I(a)(2) [AR081287].
[11] TRPA RPU DEIS pgs 3.8-6 to 3.8-7 [AR011918-9]
[12] TPRA RPU FEIS pg 2-11 [AR005067]

environment, including air and water quality.  The RPU facilitates the local jurisdictions' compliance with and attainment of required TMDL targets. In this respect, the RPU provides for a seamless and efficient implementation plan to achieve not only water quality but other environmental goals for the Tahoe Region as well.

### A.  LAKE TAHOE TMDL

Plaintiffs' brief inexplicably ignores the most recent requirements for water quality restoration of Lake Tahoe and the requirements for implementation by local governments. Under section 303(d) of the Clean Water Act, the USEPA requires states to identify impaired waters not meeting water quality standards and establish TMDL water quality restoration plans to address their impairments.[13]  Despite its ultraoligotrophic (very clean and very clear) status, Lake Tahoe is listed as a 303(d) impaired water body for certain pollutants.[14]  The amount of pollutant load the Lake can accept, while preserving its ultraoligotrophic status, is established by the regulatory standards recently adopted in the Lake Tahoe TMDL.

The Lake Tahoe TMDL was developed collaboratively by California and Nevada state agencies – the Lahontan Regional Water Quality Control Board (LRWQCB) and the Nevada Division of Environmental Protection (NDEP).  The TMDL provides a framework for a comprehensive water quality restoration plan to reduce loads from pollutant sources of fine sediment particulates and to ultimately achieve Lake Tahoe transparency and clarity water quality objectives.[15]

Stormwater runoff from urbanized land uses is identified by the TMDL as the largest source of fine sediment parcels to Lake Tahoe.[16]  Stormwater runoff occurs when precipitation from rain and snowmelt flows over impervious surfaces collecting debris, chemicals, sediment, and other pollutants that impact water quality if left untreated.[17]

---

[13] C.F.R. Tit. 40, § 22:130.6
[14] U.S. EPA Impaired Waters and Total Maximum Daily Loads, 2012
http://water.epa.gov/lawsregs/lawsguidance/cwa/tmdl/index.cfm
[15] Lake Tahoe Total Maximum Daily Load (TMDL), Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection, 2010: p. 1-1 [AR106440]
[16] Lake Tahoe TMDL Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection (2010) Executive Summary, p. ES-1, (AR106437).
[17] U.S. EPA Stormwater Program, 2012. http://cfpub.epa.gov/npdes/home.cfm?program_id=6.

3

The Lake Tahoe TMDL is identical for both California and Nevada with the exception of each state's implementation and enforcement mechanisms.  LRWQCB implements and enforces the California Lake Tahoe TMDL through a National Pollutant Discharge Elimination System Municipal Storm Water discharge permit (NPDES Permit) issued to the California local jurisdictions, including the amici City of South Lake Tahoe, El Dorado County, and Placer County.[18]  NDEP implements the TMDL through Memoranda of Agreement (MOA) between NDEP and amici Washoe and Douglas counties.[19]  Both the NPDES Permit and MOA require local jurisdictions to achieve pollutant load reduction targets established by the Lake Tahoe TMDL.[20]  The Permit and MOA provide detailed, quantitative tracking and assessment tools to hold local jurisdictions accountable for reducing specific pollutant loading targets to Lake Tahoe.[21]  These tracking and assessment tools allow for large-scale, area-wide water quality treatment mechanisms in lieu of parcel-level treatment through site-specific BMPs.[22]  That is, rather than requiring uniform water quality treatment on a parcel-by-parcel basis, the TMDL uses a larger geographic area, known as a "catchment" or sub-watershed unit, as the operative unit of compliance for pollutant load reduction from stormwater treatment.[23]  Unlike the exclusively parcel-based compliance system of the 1990s, the newly adopted Lake Tahoe TMDL now allows local jurisdictions to implement large-scale storm water collection, conveyance, and treatment projects within Area Plans.[24]  Area-wide stormwater plans must "be shown to achieve equal or greater effectiveness and efficiency at achieving water quality benefits than certain parcel-level BMPs."[25]  The Lake Tahoe TMDL thus allows the local jurisdictions the flexibility to achieve required water quality by implementing more comprehensive, area-wide treatment efforts.

LRWQCB and NDEP require the local jurisdictions to prepare, submit, and implement pollutant

---

[18] Lake Tahoe TMDL Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection, (2010) §§ 16.4.3, p. 16-6 [AR106556], 16.5.2, p. 16-11 [AR106561].
[19] Id. at § 16.5.3, p. 16-12 [AR106562].
[20] Id. at §§ 16.4.3, p. 16-6 [AR106556], 16.5.2, p. 16-11 [AR106562], 16.5.3, p. 16-12 [AR106562].
[21] Id.
[22] Code § 13.5.3.B.3 [AR000792].  TRPA's regulations adopted 20 years ago used tax assessors parcels as a proxy for a relevant stormwater treatment unit.  Prior to adoption of the Lake Tahoe TMDL in 2010, stormwater treatment was measured on a parcel by parcel basis.
[23] Lake Tahoe Regional Plan Update Final EIS – Volume 1, Tahoe Regional Planning Agency, Master Response 4, (2012) p. 3-26 [AR005098].
[24] Id.
[25] Code § 13.5.3.B.3(a) [AR000792]

4

load reduction plans which describe how load reduction milestones will be met.[26]  Load reduction plans provide LRWQCB and NDEP assurances that planned implementation actions and strategies will reduce fine sediment particle consistent with TMDL targets.[27]  If local jurisdictions fail to meet required pollutant load reduction standards, they are subject to enforcement action by the LRWQCB and NDEP.

The Lake Tahoe TMDL also establishes a detailed water quality monitoring and adaptive management framework to assess TMDL implementation progress and respond to changing conditions.[28]  The monitoring program includes a comprehensive urban storm water monitoring component to evaluate the effectiveness of storm water management practices and quantify progress at meeting required pollutant load reduction targets.[29]  The program also includes tributary stream and in-lake monitoring to measure the cumulative effect of land-use and water quality management policies and practices.[30]  LRWQC and NDEP have also committed to a formal adaptive management process known as the Lake Tahoe TMDL Management System.[31]  The Management System enables various stakeholders a clear process to interact with the LRWCB and NDEP to link available research and monitoring information with established RPU policy, determine if environmental improvement is occurring as expected, and make RPU policy adjustments if needed.

The local jurisdictions are invested in and committed to implementing the TMDL.  They have recently submitted the Implementers Monitoring Plan (IMP) to the LRWQCB and NDEP.[32]  The local jurisdictions' IMP is the "first collaborative monitoring plan for implementation efforts related to the urban stormwater source category"[33] of the TMDL.  The IMP will monitor TMDL implementation and

---

[26] Lake Tahoe TMDL Technical Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection (2010), § 11.3.1, (AR106505).
[27] *Id.*
[28] Lake Tahoe TMDL Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection (2010), § 13 [AR106527].
[29] *Id.*
[30] Lake Tahoe TMDL Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection (2010), § 13.4 [AR106534-7].
[31] Lake Tahoe TMDL Report, Lahontan Regional Water Quality Control Board and Nevada Division of Environmental Protection (2010), § 12.1 [AR106514-9.
[32] Implementers' Monitoring Program, Tahoe Resource Conservation District (2013) http://tahoercd.org/wp-content/uploads/2013/08/Implementers-MP-130812.f
[33] *Id.*at 1

---

1  supply data necessary for building a Regional Stormwater Monitoring Program.  It identifies a total of

2  nine monitoring sites—five catchment outfall sites and four BMP effectiveness projects—in five

3  locations throughout the Tahoe Basin, each with distinctive characteristics.[34]  The plan is partially

4  funded with $750,000 in Southern Nevada Public Lands Management Act funds issued by the U.S.

5  Forest Service to the Tahoe Resource Conservation District.[35]  This collaborative effort to implement a

6  crucial requirement of the Lake Tahoe TMDL demonstrates the local jurisdictions' commitment to the

7  TMDL and the overall water quality plan.

8        The Lake Tahoe TMDL and the associated NPDES Permit and MOA provide a robust,

9  defensible, and enforceable program for achieving overall water quality improvement at Lake Tahoe.

10  Local jurisdictions must meet required TMDL regulatory targets regardless of whether the RPU

11  facilitates TMDL implementation or not.

12      **B.  THE RPU FACILITATES LOCAL JURISDICTION IMPLEMENTATION OF THE TMDL**

13

14        The RPU recognizes the authorities of California and Nevada in establishing and regulating

15  under the TMDL and, where appropriate, incorporates the Lake Tahoe TMDL implementation plan as a

16  means for achieving TRPA's water quality thresholds.[36]  Plaintiffs misunderstood the role of BMPs in

17  achieving water quality.  BMPs are not the sole tool by which local jurisdictions, companies, and

18  individuals are required to help attain lake clarity.  Rather, the Lake Tahoe TMDL is the most recent

19  scientific and regulatory advancement in the overall program for attainment of TRPA's water quality

20  thresholds.[37]  Consistent with the TMDL accounting and tracking program, the RPU enhances TRPA's

21  original regulatory system and permits local jurisdictions to use area-wide water quality treatment

22  mechanisms of more relevance in combination with  certain site-specific BMPs.[38]  That is, rather than

23  requiring uniform application of site specific BMPs, the RPU and the TMDL both allow local

24  jurisdictions to implement area-wide storm water collection, conveyance, and treatment projects within

25  Area Plans thus facilitating a more streamlined and effective approach to water quality improvement

26

27  [34] *Id.* at 7, 9
   [35] *Id.* at 5

28  [36] TRPA RPU DEIS pgs 3.8-6 to 3.8-7 [AR011918-9], TPRA RPU FEIS pg 2-11 [AR005067]
   [37] TRPA RPU Staff Summary (December 5, 2012) Exhibit E – Attachment E-2 pg 10 [AR026673]
   [38] Code § 13.5.3.B.3 [AR000792].

1    within the Tahoe region.

2          Advances in water quality science for Lake Tahoe are the basis in the RPU to allow the local

3    jurisdictions, through their Area Plans, the flexibility to achieve required water quality improvements

4    either by relying on standards established by the RPU or by implementing more comprehensive, area-

5    wide treatment efforts.[39]  Either way, the states of California and Nevada hold local jurisdictions

6    responsible and accountable for achieving TMDL pollutant load reduction targets.  Furthermore,

7    because the RPU requires that Area Plans conform with the RPU before such plans can be approved

8    and implemented, TRPA ensures that all development within Area Plans either meets the TMDL or

9    meets the existing regulations and standards set forth by the original Regional Plan.[40]

10         For many decades the Tahoe region and local jurisdictions were plagued with duplicative and

11   inconsistent regulatory standards from multiple regulators and overlapping jurisdictions.  The local

12   jurisdictions support the RPU precisely because it eliminates duplicative compliance requirements and

13   facilitates a streamlined regulatory system.  The RPU conforms the many differing requirements for

14   local jurisdictions thus allowing for more feasible and effective local compliance.[41]

15         The RPU in large part accomplishes this by creating consistency between the regional water

16   quality regulatory system and the regional land use planning system.  To conform the land use planning

17   system to the water quality system--which shifted water quality treatment from a parcel based system to

18   an area-wide system--the RPU allows for and encourages an area-wide scale of land use planning over

19   the prior Regional Plan's focus on individual parcels and projects to achieve its objectives.  Such area-

20   wide planning is implemented through Area Plans which are tailored plans for the relocation of

21   coverage to facilitate effective TMDL implementation.[42]  Area Plans promote environmentally

22   beneficial redevelopment, relocating coverage off sensitive land onto high capability land in already

23   developed centers, and create more walkable town centers, deterring dispersed development and

24   reducing reliance on vehicles that impact air and water quality.

25

26

27   _____

[39] TRPA Regional Plan, Chapter 2 (2012)  pg 2-36 [AR000542]
28   [40] TRPA RPU FEIS Volume 1 (2012) § 2.2.16, pg 2-11 [AR005067]
     [41] TRPA RPU FEIS Volume 1 (2012) Master Response 4, pg. 3-27 [AR005099]
     [42] TRRA RPU FEIS §2.2.1 (2012) pg. 2-2 [AR005058], TRPA RPU FEIS Volume 1 (2012) § 2.2.16, pg 2-11 [AR005067]

7

## C.  AREA PLANS

In order to better address issues of regional significance while allowing for planning and implementation tailored to local circumstances, the RPU borrows from other successful regional planning and regulatory models to create a new framework for local jurisdiction planning and implementation.  It reinforces TRPA's general and regional responsibilities, while ensuring compliance with the Regional Plan, and its implementing Code of Ordinances, rules, regulations and policies as anticipated by the TRPA Compact over 30 years ago.[43]

Area Plans, provided for in Chapter 13 of the TRPA Code of Ordinances, once reviewed and approved by the TRPA Governing Board for conformance with the Regional Plan, including all of the Compact's required findings that the Area Plan is consistent with and furthers the goals and policies of the Region Plan, are then incorporated into the Regional Plan for implementation by local governments.[44]  If requested by local government, TRPA may then, via a Memorandum of Understanding (MOU), delegate to the local jurisdictions' review of development applications that TRPA may have historically reviewed, approved and/or denied.[45]  Area Plans allow the local jurisdictions to implement RPU policies at a local geographic scale and at the same time effect water quality improvement on an area-wide or more regional scale.[46]  TRPA approval of all Area Plans for conformance and the right of affected parties to appeal any TRPA approval are procedural safeguards assuring that the regional goals of the Compact will be satisfied.[47]  TRPA approval will only be granted where the local jurisdiction demonstrates that an Area Plan will help attain and maintain regional environmental thresholds established by TRPA.[48]

Area Plans allow local jurisdictions to specifically tailor the look and feel of local communities

---

[43] TRPA Compact Art. VI(a) [AR081296].
[44] Code §§ 13.1.3 [AR000788], 13.6 *et seq.* [AR000793]
[45] Code § 13.1.3 [AR000788].  Historically, TRPA has delegated substantial permitting authority for projects under the Compact to the local jurisdictions.  Such delegation has included authority for residential development, public works project authority, and small commercial project reviews.  The local jurisdictions' performance under delegated permit authority has always been checked through a system of periodic audits, demonstrating complete or substantial conformance to Regional Plan requirements (and at levels equal to TRPA's own self-audits).  Code § 2.5.  Any delegated project pursuant to an MOU may be appealed to the TRPA by an affected party.  Code § 13.1.3 [AR000788].
[46] Large scale projects and permitting in sensitive areas such as Lake Tahoe's shorezone will remain subject to direct permitting by TRPA.  Code § 13.7.3.A [AR000800].
[47] Code §§ 13.1.3 [AR000788], 13.6 *et seq.* [AR000793]
[48] *Id.*

within the more general regional development parameters set by the Regional Plan.[49]  For Area Plans that govern designated town centers, the local jurisdictions can utilize a mix of incentives (e.g., transfers of development rights and targeted development transfer ratios) and development allowances (e.g., additional height, density and coverage) to foster environmentally beneficial redevelopment of aging, deteriorating and polluting properties.[50]  Area Plans also allow local jurisdictions the opportunity to consolidate and eliminate inconsistent regulations and remove duplicative permitting processes between the Regional Plan and local land use plans.[51]  Increasing environmental redevelopment and property investment incentives is a reasonable and feasible means to revitalize local jurisdictions' aging commercial centers and infrastructure that if unaddressed will continue to contribute pollutants to the Lake needing to be reduced or eliminated.[52]  Area Plans encourage and incentivize redevelopment of the built environment and enhancement of the transportation and circulation network, thus creating more walkable and bike-able communities.[53]

Environmental benefits are realized by the local jurisdictions under Area Plan policy because the RPU supports the transfer and location of development within urban centers and the removal of development in environmentally sensitive areas.[54]  Area Plan policies incentivize the removal of coverage from the most environmentally sensitive areas and encourage development of the highest capability, least environmentally sensitive and already developed areas.[55]  These coverage policies help create more walkable town centers, deter dispersed development and reliance on vehicles, and redevelop blight within the local jurisdictions.

In sum, Area Plans together with delegation MOUs facilitate much needed redevelopment and re-investment in properties while simultaneously helping the Lake Tahoe Basin achieve environmental

---

[49] TRPA, Memorandum to TRPA/TMPO Governing Board & Advisory Planning Commission, October 24, 2012 [AR026230]
[50] TRPA, Memorandum to TRPA/TMPO Governing Board & Advisory Planning Commission, October 24, 2012 [AR026238]
[51] TRPA, Memorandum to TRPA/TMPO Governing Board & Advisory Planning Commission, October 24, 2012 [AR026230]
[52] TRPA, Memorandum to TRPA/TMPO Governing Board & Advisory Planning Commission, October 24, 2012 [AR026240]
[53] Id.
[54] Code § 30.4.3.A.2 [AR000880-1]
[55] Id. (explaining that when coverage is transferred from sensitive lands, coverage is retired from the sending parcel at a 1:1 ratio; and increasing ratios from non-sensitive lands.  See Table, § 30.4.3.A.2.b [AR000881])

9

thresholds and standards.  Area Plans and implementing MOUs are vital planning tools that allow for much needed development and redevelopment within the local jurisdictions' communities.

### III.  CONCLUSION

The local jurisdictions have a significant interest in the outcome of this litigation.  The RPU provides each jurisdiction much needed tools in order to meet their TMDL obligations while simultaneously revitalizing their communities.

The local jurisdictions have spent a great deal of time and resources contributing to, helping draft, commenting upon and implementing the RPU.  As this brief explains, the RPU's policies that establish Area Plans encourage improved development of town centers while incentivizing removal of development in environmentally sensitive areas.  The RPU policies reinforce the Lake Tahoe TMDL and therefore assist local jurisdictions in their obligation to meet water quality standards and thresholds.

The TMDL permits local jurisdictions to implement any variety of sediment reduction techniques, including but not limited to parcel-level BMPs (which were required under the original Regional Plan) and area-wide BMPs.  The local jurisdictions are charged with the responsibility of implementing the Lake Tahoe TMDL, and have already committed great resources in order to meet state and TRPA water quality objectives and thresholds.

Plaintiffs have ignored the Lake Tahoe TMDL and have thus ignored the alignment of the RPU regional systems for implementing both area-wide land use planning and area-wide stormwater implementation.  The local jurisdictions support the RPU because such alignment streamlines what was once a cumbersome and duplicative regulatory framework.

For the reasons set forth herein, the local jurisdictions, as amici parties, respectfully request that the Court uphold the Regional Plan and deny Plaintiffs' Motion for Summary Judgment.

Dated:  November 26, 2013                    Respectfully submitted,

                                             THOMAS WATSON
                                             City Attorney


                                                /s/ Nira Feeley
                                             NIRA FEELEY
                                             Assistant City Attorney
                                             *City of South Lake Tahoe*

10